IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**TAMAR GOULET**                                                                           **PLAINTIFF**

**v.**                                                      **CIVIL ACTION NO.: 3:22-cv-89-NBB-JMV**

**THE UNIVERSITY OF MISSISSIPPI**                                   **DEFENDANT**

### ORDER

### I. Introduction

This matter is before the court on Plaintiff's Motion to Compel [29] filed on December 27, 2022. Therein, Plaintiff seeks to compel production of an investigative report compiled and produced by Defendant's counsel after Plaintiff and five other employees filed a pre-suit internal complaint with Defendant. Defendant filed its Response [30] on January 10, 2023, asserting work-product and attorney-client privileges. Plaintiff filed her Reply [31] on January 17, 2023 – later supplemented – and the court, having now reviewed the same and completed its *in camera* review of the subject report, finds the motion to compel should be GRANTED, IN PART, as explained hereafter.

### II. The Complaint and EEOC Charge

In her 18-page complaint, plaintiff, a tenured Full Professor in the Biology Dept. at the defendant university, makes a litany of claims, including for example:

> 38. In July 2016, Gregg Roman was hired as the new Chair of the Biology Department.
>
> 39. Plaintiff contends that in 2018, Dr. Roman discriminated against her by

giving 18 out of 19 of her Tenured or Tenure Track colleagues higher raises than her even though they were less meritorious, i.e., had lesser academic achievements.

50. On or around July 10, 2018, Plaintiff complained of Dr. Roman's actions as constituting sex discrimination and pay inequity to Dean Cohen, yet nothing was done.

51. On August 1, 2018, Plaintiff then took her complaints to Provost Noel Wilkin.

52. Provost Wilkin, however, refused to address the situation and told Plaintiff that salaries were not grievable.

53. On August 26, 2020, along with five other female faculty (three of whom were tenured or tenure track faculty and two instructors, the six of them comprising 50% of the female faculty in the Biology Department), Plaintiff met with Dean Lee Cohen.

54. Following that meeting, Plaintiff and the other female faculty collectively wrote a letter to Dean Cohen to summarize what the meeting had addressed.

55. The letter outlined the six female faculty members' collective complaints against Dr. Roman for various improprieties including but not limited to: "inappropriate physical contact" and "predatory complimenting of female faculty" with the intention of manipulating or even intimidating those complimented.

56. The letter notes how in one example "Dr. Roman moved uncomfortably close to [one of the six female faculty] in the main department hallway in order to insistently compliment that person's hair.

57. The faculty member maneuvered down the hallway in an attempt to escape, but Dr. Roman pursued her as she slid with her back against the wall."

58. The letter further states that Dr. Roman "employs such uninvited physical compliments before making professional requests of female faculty.

59. The letter further states that Dr. Roman "touches woman without their consent. He has stroked the arm of a female faculty member and another time attempted to stroke her neck and chin."

60. In summary, the letter is a complaint by the six female faculty members against Dr. Roman's highly inappropriate and manipulative behavior toward female faculty members.

61. On June 8, 2021, Plaintiff filed an EEOC Charge of sex discrimination, sex harassment, retaliation, and a violation of the Equal Pay Act.

62. On October 22, 2021, UM responded to Plaintiff's EEOC Charge of Discrimination with a Position Statement.

In her accompanying EEOC charge, Plaintiff also asserted, in part:

> I have been the victim of sex discrimination at the hands of my former boss, Dr. Gregg Roman, whose behavior was abetted by higher-level administrators. I have been sexually harassed, retaliated against for reporting his conduct by both him and the University of Mississippi administration, and paid less than similarly situated men. These actions have caused detrimental effects in my employment, including loss of pay and loss of reputation. These actions are ongoing and pervasive. I exhausted my administrative appeals on 1-8-21.
>
> Five other women have come forward to complain about the actions of Dr. Gregg Roman and the University Administration. The University has also used it's on-campus equal opportunity office (Equal Opportunity and Regulatory Compliance office (EORC)) as a tool of retaliation against women who step forward with allegations of unlawful discrimination. I have documentary evidence of the University's actions and numerous women on campus can recount similar stories of discrimination and retaliation—including administrative cover-ups and retaliation by EORC.
>
> The actions of Dr. Gregg Roman and the University of Mississippi violate Title VII and the Equal Pay Act.

Based on these and other allegations, plaintiff asserts the following causes of action against the defendant University:

> VIOLATION OF TITLE VII – SEX DISCRIMINATION;
> VIOLATION OF TITLE VII – RETALIATION;
> VIOLATION OF THE FEDERAL EQUAL PAY ACT (EPA); and
> VIOLATION OF THE FEDERAL EQUAL PAY ACT (EPA) –
> RETALIATION.

### III. The Answer, the Investigatory Report, and the Response to the EEOC Charge

By answer to the complaint, the University has denied liability, stating affirmatively, among other defenses, that it took "reasonable steps to prevent and promptly correct harassment" and has not engaged in unequal pay based on gender.

In response to the EEOC charge, itself, the University, relying at least in part on its internal investigation of the subject complaints – a summary of which was provided to Ms. Goulet – explained as follows:

> Neither Dr. Goulet nor her colleagues filed a formal complaint of sexual harassment with the University's EORC Office during the relevant time period. However, on August 26, 2020, Dr. Goulet and five of her female biology department colleagues … delivered to the following individuals a letter in which they complained that Dr. Greg Roman, the

> Department Chair at the time, acted improperly over an extended period: …. As Goulet and her colleagues did not wish to report their claims to the University's EORC office or engage in the University's normal grievance or EORC complaint and investigation process, the University's Office of General Counsel was asked to consider and investigate the complaints. Ms. McKinley undertook the investigation and evaluation of the complaints with outside counsel working at her direction. The University's outside counsel interviewed each grievant, Dr. Roman, and numerous faculty and staff within the department and received and considered documents from Goulet and others. The University concluded that the complaints did not rise to the level of current actionable claims or grievances under the University's rules or policies or applicable law. The University provided Goulet and Roman a summary report related to the investigation and findings on December 11, 2020. Roman is no longer Chair or a member of the Biology Department. No University official has taken any disciplinary or adverse employment action against Goulet. The August 26, 2020 Letter is attached as Exhibit D, and the December 11, 2020 Letter is attached as Exhibit E….

The University also maintained in its position statement to the EEOC that "outside counsel's report to the University and related materials are privileged and confidential under the attorney-client privilege and work product doctrine. Outside counsel informed Goulet of these conditions when they interviewed her." Further, the University explained in its EEOC position statement that "the University's preparation and provision of the report to Drs. Goulet and Roman was consistent with the University's Non-Discrimination and Complaint Procedure. Neither the report, nor the manner in which it was disseminated, constituted sex-based discrimination or retaliation."

The University further explained to the EEOC that it investigated Dr. Goulet's complaints about Dr. Roman, and that:

> She told the University she was satisfied with the investigation and the result. While Dr. Goulet outlined numerous complaints about Dr. Roman during the investigation, no witness in the investigation identified behavior that could be construed as actionable sex discrimination. Dr. Goulet was not terminated or demoted, and her pay and benefits have not been reduced. She has been employed in the same Department for twenty years, during which time she has been promoted to full professor and awarded academic tenure. She has not identified any more favorable treatment received by similarly situated male employees. Dr. Goulet has also identified no conduct that could be considered actionable sexual harassment. None of the conduct she described to investigators, including Dr. Roman's perceived failure to recognize her achievements, dismissive body language, and

a single hug after asking her permission in 2016, was so severe or pervasive as to alter the terms of her employment or create a hostile or abusive work environment. She never alleged that Dr. Roman made any sexual advances toward her or engaged in other behavior that was sexual in nature. At most, Goulet has identified petty slights, annoyances, and isolated incidents, none of which rise to the level of illegality. Her complaints about Dr. Roman, even if true, would not constitute sex discrimination and are time barred.

## IV.     Discovery

In response to written discovery in this case, the University identified, in a privilege log, approximately 1110 pages of documents that comprise the Investigative Report of counsel referred to above. It consists of a 64-page report (containing summaries of witness interviews, factual investigative findings, and legal analysis) and numerous attachments.

As noted, by motion filed 12/27/22, Plaintiff seeks to compel the University's production of that Report on the grounds that all claimed privileges have been waived by the University who has, as outlined above, repeatedly referenced the same in defending against Plaintiff's claims.

Since the filing of the motion to compel, counsel for Plaintiff and the University have worked together to resolve their differences over the investigative report's production and the court now understands that, of the original 1100 or so pages involved, all that remains as the subject of dispute are 32 pages of the 64-page report itself. To be more specific, the court understands that the parties are in agreement that the following pages of the 64-page report are not at issue and not subject to the motion to compel: pp. 11-22; 28; 32-35; 43-44; 48; 51-54; and 57-64. Of the remaining 32 pages of the 64-page report, there are a number that contain partial redactions – redactions that the court similarly understands are uncontested and not subject to the motion to compel.

Regarding the unredacted portion of the 32 pages, the defendant maintains that it has not waived the work-product and attorney-client privileges because, though it relied on the investigation in responding to the EEOC charge, it has not relied on it in responding to the civil complaint itself. Further, the defendant contends that the civil complaint, unlike the broader EEOC charge, does not even complain of sexual harassment (as to which "prompt remedial action," which may include "prompt and thorough investigations," might be a defense), *Johnson v. VT Halter Marine, Inc.*, 820 Fed. App'x 283, 286 (5th Cir. 2020) (*citing Carmon v. Lubrizol Corp.*, 17 F.3d 791, 795 (5th Cir. 1994)), but asserts, instead only a claim for unequal pay based on gender/retaliation (as to which no such defense exists). In other words, Defendant maintains that the report is not relevant to any defense it may have to the equal pay claims pursued in the instant civil action.

### V. Legal standards applicable to privileges

In general, there are three distinct grounds on which a party may seek the production of work product: disclosure to a third party, placing the material at issue, and substantial need. Fed. R. Civ. P. 26(b)(3)(A)(ii). Courts in the Fifth Circuit have found that when a party cites to an investigation to show it exercised reasonable care in dealing with any harassing behavior, the party waives work product with respect to the investigative report and any underlying documents. *Doe 1 v. Baylor Univ.*, 335 F.R.D. 476, 488-89 (W.D. Tex. June 2, 2020) (citing *Mir v. L-3 Commc'ns Integrated Sys., L.P.*, 315 F.R.D. 460, 470-71 (N.D. Tex. July 22, 2016); *Williams v. United States Envtl. Servs., LLC*, 2016 WL 617447, at *5 (M.D. La. Feb. 16, 2016); *Butler v. La. Dep't of Pub. Safety & Corr.*, 2014 WL 3866100, at *5 (M.D. La. Aug. 6, 2014)).

With respect to the attorney-client privilege, courts generally find that "disclosure of an otherwise privileged communication to a third party 'eliminates the intent for confidentiality on

which the privilege rests,' it results in waiver of the privilege." *B.P. Buford, LLC v. Miss. Sand Solutions, LLC*, No. 3:18cv534-TSL-RHW, 2020 WL 13605466, at *2 (S.D. Miss. May 13, 2020) (quoting *Martin v. Am. Employers' Ins. Co.*, 115 F.R.D 532, 535-536 (S.D. Miss. 1987)). *See also, e.g., YETI Coolers, LLC v. RTIC Coolers, LLC*, Civil Action No. A-15-CV-597-RP, 2016 WL 8677303, at *2 (W.D. Tex. Dec. 30, 2016) ("Generally, a party waives attorney-client privilege when it voluntarily discloses privileged communications to a third party, including an adversary in litigation."); *Wachob Leasing Co. v. Gulfport Aviation Partners, LLC*, 2016 WL 3449897, at *2 (S.D. Miss. June 16, 2016); *Solis v. Bruister*, 2013 WL 493374, at *2 (S.D. Miss. Jan. 22, 2013) (voluntary disclosure of privileged information to third parties constitutes a waiver and destroys any privilege claims).

"The attorney-client privilege was intended as a shield, not a sword." *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989) (quotation omitted). When a litigant places information protected by attorney-client privilege at issue through some affirmative act for the litigant's own benefit, then allowing the privilege to protect against disclosure would be manifestly unfair. *Id.* (citations omitted).

## VI. Analysis

Having reviewed the relevant pleadings and the investigative report submitted to the court *in camera* against the applicable legal standards cited above, I find that the attorney-client and work-product privileges, with respect to all but 10 of the 32 pages still in dispute, have been waived for the reason that the information discussed in that material has already been disclosed by the University and its counsel to third parties – or in light of what has been disclosed, fairness would dictate the balance should be as well. Indeed, not only has the University made repeated reference to the content of the investigative report, but it has also, by virtue of a summary of the

report disclosed to Ms. Goulet, already given it to her. Additionally, while the court is cognizant that the defendant has asserted that the instant complaint, unlike the EEOC charge itself, is limited to pay inequity and does not assert sexual harassment, I find that, even if that were the case (despite the actual allegations made in the complaint), the investigative report is nevertheless relevant because it – like the disclosed abbreviated report – discusses, specifically, Plaintiff's pay equity issues and other issues that might bear on Plaintiff's rate of pay.

The pages I find that the privileges have not been waived, or which are not relevant, concern counsel's initial retention and its strategy to achieve completion of the report. Those pages are numbered 1-10 of the report.

### VII. Conclusion

IT IS ORDERED that the defendant shall produce 22 pages, some of which, as noted above, include some uncontested redactions, of the 32 pages of the investigative report that remain at issue.[1] Production shall be made on or before 3 business days from the date of this order.

SO ORDERED, this the 22nd day of March, 2023.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**

---

[1] The pages to be produced are: pp. 23-27; 29-31; 36-42; 45-47; 49-50; and 55-56.